UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDRES VARELA-PIETRI
and MIGDALIA BONILLA,

    Plaintiffs,

v.                                                     CASE NO. 8:17-cv-2534-T-23TGW

BANK OF AMERICA, N.A.,

    Defendant.
_____/

## ORDER

A decade ago, the Treasury Department introduced the Home Affordable Modification Program, which allegedly requires a participating bank to use "reasonable efforts" to modify the mortgage of a person either in default or reasonably likely to default.[1] After an eligible mortgagor applies for a modification, the program requires several "trial payments" before the bank approves the modification.

## THE PROCEDURAL HISTORY

In June 27, 2017, Andres Varela-Pietri, Migdalia Bonilla, and 117 other plaintiffs sued Bank of America in a single action and alleged fraud. *Case no*. 8:17-cv-1534-RAL (M.D. Fla. June 27, 2017). Moving to dismiss the complaint, Bank of America argued misjoinder of the plaintiffs' claims, failure to plead fraud with

---

[1] Bank of America disputes that a "reasonably foreseeable" likelihood of default qualifies a mortgagor for a modification and contends that a modification requires either delinquency or an "imminent default."

particularity, failure to state a claim, expiration of the four-year limitation, and the absence of a private right to sue a bank for violating the requirements of the Home Affordable Modification Program.  Before resolving the motion, the presiding judge observed that the complaint, which alleged neither each plaintiff's citizenship nor the amount in controversy between each plaintiff and Bank of America, failed to invoke diversity jurisdiction.  (Doc. 15 in case no. 17-cv-1534)  Ordered to amend the complaint to invoke diversity jurisdiction, Varela-Pietri, Bonilla, and the other plaintiffs submitted a 403-page complaint.  (Doc. 16 in case no. 17-cv-1534)  Again, Bank of America moved to dismiss the complaint and repeated the arguments from the earlier motion. The presiding judge in that action found misjoinder, severed the plaintiffs' claims, and ordered the plaintiffs to sue separately.

The plaintiffs heeded the presiding judge's command.  Between October 30, 2017, and November 3, 2017, more than a hundred plaintiffs sued Bank of America in the Middle District of Florida in eighty actions and alleged fraud under Florida common law.  Excepting names, dates, addresses, and the like, the complaints are identical.  The actions are distributed among eight district judges in the Middle District of Florida.  In two actions, the presiding judges found the claims barred by the four-year limitation.[2]

---

[2] *Torres v. Bank of America, N.A.*, 2018 WL 573406 (M.D. Fla. Jan. 26, 2018) (Lazzara, J.), *appeal filed* (Case no. 18-10698); *Paredes v. Bank of America, N.A.*, 2018 WL 1071922 (M.D. Fla. Feb. 27, 2018) (Chappell, J), *appeal filed* (Case no. 18-11337). Additionally, a district judge in California found an identical claim barred by a limitation. *Mandiosa v. Bank of America, N.A.*, 2:17-cv-8153 (C.D. Cal. Mar. 15, 2018) (Walter, J.).

- 2 -

In their third complaint (but the first complaint in this case), Varela-Pietri and Bonilla alleged (Doc. 1) four misrepresentations by Bank of America. First, Bank of America allegedly failed to mention that a reasonably foreseeable danger of default might qualify a mortgagor for a modification; second, Bank of America stated that the mortgagors failed to provide Bank of America with the documents necessary to complete the modification; third, Bank of America orally notified the mortgagors that the bank approved the requested modification; and fourth, Bank of America charged a "fraudulent" inspection fee. Bank of America again moved (Doc. 10) to dismiss the complaint.

A February 1, 2018 order (Doc. 13) dismisses each fraud claim except the claim based on Bank of America's alleged misrepresentation of the eligibility requirement for a modification. In the remaining claim, the plaintiffs allege that on July 13, 2009, a Bank of America employee, "Carolina," told Varela-Pietri and Bonilla that a modification requires a default. According to Varela-Pietri and Bonilla, a modification in fact requires either a default or an "eminent" [sic] danger of default. (Doc. 1 at ¶ 38) Allegedly relying on Bank of America's misrepresentation, Varela-Pietri and Bonilla stopped paying their mortgage and "fell into default status." (Doc. 1 at ¶ 39) Varela-Pietri and Bonilla attribute the loss of his house and the equity in his house to Bank of America's alleged misrepresentation.

On June 18, 2018, a month after the close of discovery, Bank of America moved (Doc. 30) for summary judgment. Bank of America argues that *Rooker-*

*Feldman* bars the fraud claim. Local Rule 3.01(b) required Varela-Pietri and Bonilla to respond to the motion no later than July 2, 2018, but Varela-Pietri and Bonilla moved (Doc. 31) successfully for a two-week extension of the time to respond to the motion for summary judgment.

Four days after the expiration of the time within which to respond, Varela-Pietri and Bonilla moved (Doc. 38) to defer the summary judgment motion under Rule 56(d) and to amend the complaint. Because Varela-Pietri and Bonilla provided "no cogent reason for deferring the resolution of Bank of America's motion for summary judgment" and because Varela-Pietri and Bonilla failed to explain or to identify the contemplated amendment, an August 9, 2018 order (Doc. 42) denies Varela-Pietri's and Bonilla's motions and orders them to respond no later than August 17, 2018, to Bank of America's June 18, 2018 motion for summary judgment. The order provides that **"No further extension is available absent an extraordinary circumstance**." Four days after the expiration of the time within which to respond, Varela-Pietri and Bonilla filed a response (Doc. 46) to Bank of America's motion for summary judgment. For filing late, Varela-Pietri and Bonilla offer no excuse.

## DISCUSSION

Bank of America argues (Doc. 30 at 20) that the plaintiffs attempt in effect to attack the state-court foreclosure and the resulting deficiency judgment.

The weight of authority strongly supports Bank of America's argument that *Rooker-Feldman* bars the fraud claim. In *Figueroa v. Merscorp, Inc.*, 766 F.Supp.2d 1305

(S.D. Fla. 2011) (Altonaga, J.), *aff'd*, 477 Fed.Appx. 558 (11th Cir. May 11, 2012), a bank sued in state court to foreclose a mortgagor's property, and the state court entered judgment for the bank and ordered a foreclosure sale. Moving in state court to vacate the judgment, the mortgagor argued that the bank secured the foreclosure judgment through fraud. After the state court denied the motion, the mortgagor sued the bank in federal court under RICO and "[sought] damages arising out of the loss of his home." After thoroughly surveying the authority, Judge Altonaga found the claim "inextricably intertwined" with the foreclosure judgment. 766 F.Supp.2d at 1315–25. Affirming the dismissal under *Rooker-Feldman*, the Eleventh Circuit concluded, "The state court judgment formed the basis of or was intertwined with the injury complained of in Figueroa's instant complaint: that [Figureroa] lost his one half-interest in his property and home because of an improper foreclosure proceeding." 477 Fed.Appx. at 560.

Similarly, *Nivia v. Nation Star Mortg., LLC*, 620 Fed.Appx. 822 (11th Cir. Aug. 19, 2015), strongly suggests a bar by *Rooker-Feldman*. In *Nivia*, a bank won a foreclosure judgment in December 2011. Nine months after the judgment and a month before the foreclosure sale, the mortgagor requested a HAMP modification, which the bank denied. After the sale, the mortgagor sued in federal court for violations of HAMP and Florida's Deceptive and Unfair Trade Practices Act.

Finding the HAMP claim not barred by *Rooker-Feldman*, *Nivia* explains, "The homeowners alleged only that the lenders failed to respond adequately to their

- 5 -

September 2012 request for a loan modification, which could not have been at issue in the foreclosure proceeding that concluded in December 2011."[3] 620 Fed.Appx. at 824. In contrast, *Nivia* finds the FDUTPA claim barred by *Rooker-Feldman*:

> We construe the homeowners' allegation to extend beyond the
> lenders' denial of the September 2012 loan modification request
> and to include conduct before the foreclosure judgment. In effect,
> the homeowners' claim amounts to an equitable defense to foreclosure
> that [the homeowners] failed to raise before the state court.

620 Fed.Appx. at 825. Because success on the FDUTPA claim suggested error in the foreclosure judgment, *Nivia* finds the FDUTPA claim barred by *Rooker-Feldman*.

Nothing (or, at least, nothing consequential) appears to distinguish the fraud claim in this action from the RICO claim in *Figueroa* or the FDUTPA claim in *Nivia*. Varela-Pietri and Bonilla allege that Bank of America misrepresented the eligibility requirement for a modification and that this purported misrepresentation was "specifically designed by BOA to set Plaintiff up for foreclosure." (Doc. 1 at ¶ 38) The majority of the complaint chronicles a scheme in which Bank of America allegedly tricked Varela-Pietri and Bonilla into not paying the mortgage so that Bank of America could foreclose.[4] Varela-Pietri and Bonilla complain exclusively about a misrepresentation that preceded — and ultimately caused — the foreclosure. And Varela-Pietri and Bonilla allege principally that the misrepresentation resulted in the

---

[3] Although finding the HAMP claim not barred by *Rooker-Feldman*, *Nivia* affirms the dismissal of the HAMP claim because HAMP confers no private right of action. 620 Fed.Appx. at 825 (citing *Miller v. Chase Home Fin., LLC*, 677 F.3d 1113 (11th Cir. 2012)).

[4] As Bank of America correctly recognizes in the motion (Doc. 32) in limine, the remainder of the complaint appears copied from complaints and affidavits in unrelated civil actions.

- 6 -

"loss of their home and the equity in that home," a loss occasioned by the state-court action, which foreclosed Varela-Pietri's and Bonilla's right of redemption and resulted in a deficiency judgment that included not just principal and interest owing but also the inspection fees owing under the lending agreement. In sum, the fraud claim in this action appears a circuitous but unmistakable attempt to impugn the validity of the foreclosure judgment.[5]

## CONCLUSION

Bank of America allegedly told the plaintiffs that a mortgage modification requires a default but omitted to mention that a "reasonably foreseeable/imminent" default might qualify a mortgagor for a modification. The complaint alleges that Bank of America intentionally misrepresented the requirement in an effort to trick Varela-Pietri and Bonilla into a foreclosure, which Bank of America successfully secured after suing in state court. Because the fraud claim is "inextricably intertwined" with the state-court foreclosure, *Rooker-Feldman* bars the claim.

---

[5] If not barred by *Rooker-Feldman*, the fraud claim is barred by *res judicata* (which some decisions occasionally describe in this circumstance as "merger-and-bar"). Under Florida law, a compulsory counterclaim includes a counterclaim "logically related" to the claim. *Neil v. South Fla. Auto Painters, Inc.*, 397 So. 2d 1160 (Fla. 3d DCA 1981). The Florida decisions construe this "logical-relation" test broadly. *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1381 & n.1 (11th Cir. 1991). The fraud claim in this action relates logically to Bank of America's claims in the foreclosure action: Bank of America alleged in state court that the plaintiff defaulted on the mortgage, and the plaintiff alleges in this action that the default resulted from Bank of America's misrepresentation of the eligibility requirement for a modification. Because the plaintiff must have counterclaimed but failed to counterclaim in state court, *res judicata* prevents the plaintiff's litigating the claim now. (Viewed somewhat differently, the fraud claim constitutes an affirmative and equitable defense that the plaintiff waived by failing to assert the defense in the state-court foreclosure action. Whatever the label, the same result obtains.)

The motion (Doc. 30) for summary judgment is **GRANTED**, and the clerk is directed to enter a judgment of dismissal without prejudice.[6] After entering judgment, the clerk must terminate the pending motions and close the case.

ORDERED in Tampa, Florida, on September 4, 2018.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[6] Because of the disposition of the *Rooker-Feldman* argument (a subject-matter jurisdiction defect), the dismissal is without prejudice.